**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

OCT 2 2 2025

AT 8:30 _____ 2:15 PM ___
CLERK, U.S. DISTRICT COURT - DNJ

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Hon. Michael A. Shipp |
| | : | |
| v. | : | Criminal Number: 25-657 |
| | : | |
| DAVID MENLOW and | : | 18 U.S.C. § 1349 |
| MENACHEM PARIENTEE | : | 18 U.S.C. §§ 1343, and 2 |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

#### Individuals

1.    At all times relevant to this Indictment:

a.    Defendant David Menlow ("MENLOW") resided in Green Brook, New Jersey.

b.    Defendant Menachem Parientee ("PARIENTEE") resided in Green Brook, New Jersey, and Princeton, New Jersey.

c.    Victim-1 resided in Flemington, New Jersey, and owned a gas station in Raritan, New Jersey (the "Gas Station").

d.    MENLOW held a position of trust with Victim-1 and knew Victim-1 from at least as early as 2014.

e.    MENLOW represented to Victim-1 that PARIENTEE was a billionaire, and PARIENTEE continued to represent that he was a billionaire

throughout his relationship with Victim-1.

f.     MENLOW and PARIENTEE communicated with Vicitm-1 using a messaging application (the "Chat App").

**The Conspiracy**

2.     From at least as early as in or around September 2019 through in or around April 2021, the defendants,

**DAVID MENLOW** and
**MENACHEM PARIENTEE,**

did knowingly and intentionally conspire with each other and others to devise a scheme and artifice to defraud Victim-1 and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

**Goal of the Conspiracy**

3.     The goal of the conspiracy was for MENLOW and PARIENTEE to enrich themselves by using material misrepresentations and omissions to fraudulently obtain approximately $600,000 from Victim-1.

**Manner and Means of the Conspiracy**

4.     It was part of the conspiracy that:

a.     PARIENTEE represented to Victim-1 that he knew the President of the Dominican Republic, that the President of the Dominican

Republic had requested his assistance to import fuel into the Dominican Republic, and that Victim-1 could participate in a lucrative business venture for that purpose.

b.      In or around October 2019, MENLOW and PARIENTEE falsely told Victim-1 that she had significant personal tax debts, and directed Victim-1 to place Victim-1's assets into an escrow bank account that MENLOW and PARIENTEE controlled ("Account-1") so that MENLOW and PARIENTEE could facilitate the sale of the Gas Station. MENLOW and PARIENTEE falsely represented to Victim-1 that her debts negatively affected the prospect of a sale of the Gas Station, and that she should put all of her money into escrow accounts in order to facilitate the sale.

c.      In or around November 2019, MENLOW and PARIENTEE falsely represented to Victim-1 that they found a buyer for the Gas Station. MENLOW and PARIENTEE further falsely represented to Victim-1 that Victim-1 needed to provide additional funds into Account-1 to facilitate the sale. Based on these and other misrepresentations, Victim-1 sent hundreds of thousands of dollars to Account-1.  Rather than holding the money in escrow for the sale of the Gas Station, MENLOW and PARIENTEE withdrew cash, spent the money on MENLOW's business, and spent the money on personal expenses including hotels and luxury items.

d.      In or around December 2019, in reliance on the misrepresentations that MENLOW and PARIENTEE made, Victim-1 sold two rental homes she owned.  On or about December 23, 2019, Victim-1 used the

proceeds to issue a check for $352,000, which was deposited into another account that MENLOW and PARIENTEE controlled and falsely represented to be an escrow account ("Account-2"). Rather than holding the money in escrow as they had promised Victim-1, MENLOW and PARIENTEE withdrew $170,000 from Account-2 in cash and a cashier's check issued to PARIENTEE.

e.    On or about January 7, 2020, in reliance on the false representations of MENLOW and PARIENTEE, Victim-1 closed Victim-1's retirement account and sent approximately $148,000 to Account-2. Rather than holding the money in escrow, MENLOW and PARIENTEE spent approximately $110,000 on luxury purchases, restaurants, travel bookings, other personal expenses, and cash withdrawals.

f.    In or around March 2020, MENLOW and PARIENTEE told Victim-1 that the purported buyer was not going to purchase the Gas Station. However, MENLOW and PARIENTEE represented that they would create a Real Estate Investment Trust (the "REIT"), that MENLOW, PARIENTEE, and Victim-1 would be partners in the REIT, and that they would place the Gas Station into the REIT, which would own the Gas Station. However, MENLOW and PARIENTEE told Victim-1 that they needed additional money from Victim-1 so that Victim-1 could exercise an "option" to enter the REIT.

g.    MENLOW and PARIENTEE convinced Victim-1 to obtain the cash value of Victim-1's spouse's life insurance in order to exercise the "option" to enter the REIT. Specifically, on or about April 17, 2020, MENLOW falsely told Victim-1 that, once she sent the check, approximately $1,000,000 that

had been held in escrow would be released to her. In reliance on these and other false and fraudulent representations, Victim-1 obtained a cash payout from Victim-1's spouse's life insurance policy. With that money, Victim-1 obtained a cashier's check for $18,000, which was deposited into Account-1 on or about April 17, 2020.

h.    Rather than using that money towards a REIT and providing Victim-1 with approximately $1,000,000 as MENLOW and PARIENTEE had represented to Victim-1, they withdrew thousands of dollars in cash and otherwise spent it on personal expenses. MENLOW and PARIENTEE did not provide any documents to Victim-1 showing the existence of a REIT and did not provide the name of the purported REIT.

i.    Victim-1 messaged MENLOW and PARIENTEE for months afterwards asking them to return her money.

j.    On or about April 20, 2021, during a recorded discussion, PARIENTEE admitted to Victim-1 that he owed her approximately a million dollars. He falsely claimed that the REIT would be making payments soon.

k.    In total, based on the false misrepresentations from MENLOW and PARIENTEE, Victim-1 sent approximately $600,000 to Account-1 and Account-2. Rather than holding the money in escrow as they had represented they would, MENLOW and PARIENTEE withdrew hundreds of thousands of dollars in cash and spent it on luxury goods, hotels, travel, and restaurants, among other purchases.

In violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FOUR
(Wire Fraud)

1.      Paragraphs 1, 2, 3, and 4 of Count One of this Indictment are realleged here.

2.      On or about the dates set forth below, in Somerset County, in the District of New Jersey and elsewhere, the defendants,

**DAVID MENLOW** and
**MENACHEM PARIENTEE**,

did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of one or more materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain, writings, signs, signals, pictures, and sounds, as set forth more fully below, each such wire transmission constituting a separate count of this Indictment:

| Count | Approximate Date | Description |
| --- | --- | --- |
| 2 | October 25, 2020 | Message on the Chat App from MENLOW to Victim-1 regarding the REIT |
| 3 | March 12, 2021 | Message on the Chat App from PARIENTEE to Victim-1 regarding the REIT |
| 4 | March 19, 2021 | Message on the Chat App from MENLOW to Victim-1 regarding a purported attorney for the REIT. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

1.  Upon conviction of the offenses charged in Counts One through Four of this Indictment, the defendants

**DAVID MENLOW and
MENACHEM PARIENTEE,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real and personal, which constitutes or is derived from proceeds traceable to the commission of such offenses.

### Substitute Assets Provision

2.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

A True Bill,

_____
Foreperson

TODD BLANCHE
U.S. Deputy Attorney General

/s/ Alina Habba / bah
ALINA HABBA
Acting U.S. Attorney
Special Attorney

/s/ Christopher Fell
Christopher Fell
Assistant U.S. Attorney

CASE NUMBER: 25-CR-657 (MAS)

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

v.

## DAVID MENLOW and
## MENACHEM PARIENTEE

# INDICTMENT FOR

18 U.S.C. § 1349
18 U.S.C. § 1343 & 2

Foreperson

TODD BLANCHE
UNITED STATES DEPUTY ATTORNEY GENERAL

ALINA HABBA
ACTING UNITED STATES ATTORNEY
SPECIAL ATTORNEY

CHRISTOPHER FELL
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
862-301-0068